IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | |
| | § | No. 3:17-cr-460-D (2) |
| JAQUREAY ADAMS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Jaqureay Adams is charged with Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846; Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841 (b)(1)(D) and 18 U.S.C. § 2; and Possession of a Semiautomatic Assault Weapon in Furtherance of a Drug Trafficking, in violation of 18 U.S.C. §§ 924(c)(1)(A) & (B)(I) and 2 in a second superseding indictment filed in this district. *See* Dkt. No. 151.

On his arrest on the first superseding indictment, Adams had his initial appearance on December 27, 2017. *See* Dkt. No. 133. After a detention hearing on December 28, 2017, the Court denied the government's motion for detention and ordered Adams released subject to – and only once compliance was confirmed with – certain conditions. *See* Dkt. Nos. 139 & 140. The Court explained at the conclusion of the hearing that

> [w]e're here, back here today for a hearing on the Government's motion for detention as to Jaqureay Adams, charged by superseding indictment in this case with violating two different drug offenses, a violation of 21 United States Code Section 846 and 841(b)(1)(D), as well as a firearm in furtherance of that drug trafficking offense, in violation of 18 United

-1-

States Code Section 924(c).

The Government has moved for detention and has invoked, as is its right, the so-called rebuttable presumption that provides that, whereas here, a grand jury has indicted the defendant and thereby found probable cause to believe that Mr. Adams has committed a drug offense that carries with it at least a 10-year maximum sentence, that the Court is to presume there is no combination of conditions that the Court could set to reasonably assure Mr. Adams' appearance as required or the safety of the community if he was to be released.

This requires Mr. Adams to come forward with some evidence to rebut that presumption – that is, that suggests that there in fact are conditions that could be set to reasonably assure his appearance and the safety of the community – and then the burden remains with the Government to ultimately prove its motion if he comes forward with some evidence.

I've considered the testimony of Officer Schroeder, one of the case agents, the report of Pretrial Services, Government's Exhibits 1 through 7 that have been admitted, which includes Government's Exhibit 6 that is ten video clips that were shown here in court today. I've considered all this in light of the factors that are set out by the Bail Reform Act for consideration here that include the nature and circumstances of the charged offense, the apparent weight of the evidence against Mr. Adams, and his history and characteristics.

Here, the evidence clearly shows by video Mr. Adams handling large amounts of drugs and cash with a gun in his waistband in the apartment where his codefendants are engaged in drug trafficking that evidence shows consistently involves several firearms and the brandishing of a firearm each time a customer comes in, as well as showing Mr. Adams' own Facebook page and posts supporting those same codefendants after some of the arrests some months ago.

The evidence showed that Mr. Adams had access to an area of the apartment where this conspiracy, this drug trafficking conspiracy was taking place, where suppliers, not customers of the drugs, were present. And the evidence also shows that law enforcement has included Mr. Adams as a confirmed gang member, along with his codefendants, and that he was known to Irving Police Department for several years and is now facing a long – a substantial prison sentence if he is convicted of the charges.

I do find Mr. Adams has come forward, though, with some evidence to rebut the presumption as to each of these matters. The evidence shows he has a concealed handgun license [("CHL")] as well as a commercial driver's license to allow him to drive trucks. He is gainfully employed as a truck driver, including for FEMA in hurricane relief for the last three

months. In fact, the evidence shows he was actually arrested going to the Department of Public Safety or what we – somebody said we all think of as the DMV in connection with his CDL, and has a history of gainful employment outside of drug trafficking.

He has no criminal history, no passport or history of international travel. His mother came forward and testified today. I should say, I considered her testimony, too, Sharhonda Adams' testimony. She's willing to be a third-party custodian and have Mr. Adams live with her. I do find that this is evidence to rebut the presumption both as to risk of flight and danger.

The question then is, it seems to me, whether, at this point, then, under the proper analysis here, whether the evidence of Mr. Adams' involvement with the codefendants in drug trafficking that included firearms and facing a long sentence, as I mentioned a few minutes ago, means, under these circumstances, that there's no combination of conditions that the Court could set to reasonably assure the safety of the community and his appearance as required if he were to be released.

Under all the circumstances here, I believe there is such a combination of conditions, despite the gravity of the drug and firearm offenses that are involved in this conspiracy and the amount of prison time that Mr. Adams faces. I don't mean to give undue credit to this, but I should have mentioned a moment ago, I should say, evidence of his involvement with his now-detained codefendants in this drug trafficking activity. Under all the circumstances here and given the conditions and the resources that are available, I do believe there are conditions that could be set to reasonably assure the safety of the community and Mr. Adams' appearance if he is released, and I will therefore deny the Government's motion for detention and order that Mr. Adams be released subject to certain conditions, which I will go over now.

Dkt. No. 210 at 86-89.

Among those conditions required by the Court's Order Setting Conditions is that Adams's mother serve as his third-party custodian; that Adams "not possess a firearm, destructive device, or other weapon"; and that Adams "surrender all firearms by 9 am on December 29, 2017 to pretrial services as well as the concealed handgun license" that the evidence at the detention hearing led the Court to believe that Adams had been issued. Dkt. No. 140 at 2. The Court imposed the latter condition – and

conditioned Adams's release on its first being met – after a discussion on the record with counsel:

> THE COURT [TO MR. ADAMS]: I am going to order that you not possess a firearm, destructive device, or other weapon. I guess I'm happy to hear from Ms. Jones on this. I'm not going to order that you turn over your commercial handgun license, but simply that you don't actually possess it, that you surrender the weapons, any weapons that you currently have, and you not obtain any or possess any at any time. Whether – what that does with your commercial handgun license or the concealed handgun license under state law is, as far as I'm concerned, for somebody else to deal with.
> ....
> THE COURT: Ms. Jones, are there any other conditions the Government would ask that I consider?
> MS. JONES: Yes, Judge. The Government does request that that weapon that he has discussed be turned in by tomorrow morning at 9:00 a.m. to Pretrial Services. And then also I understand the Court's position on the CHL. It's a state matter. But that does come with an actual license. The Government would ask that that be turned in as well to Pretrial Services no later than 9:00 a.m. And –
> THE COURT: Okay. I mean, I see what you're saying.
> MS. JONES: Right.
> THE COURT: I mean, surrender the –
> MS. JONES: Actual – yeah.
> THE COURT: Yeah.
> MS. JONES: I understand the Court doesn't have jurisdiction to revoke that license, but we would ask that the hard copy of that license be turned in.
> ....
> THE COURT: Further, I will add the condition that Mr. Adams will surrender all firearms by 9:00 a.m. on December 29, 2017 to Pretrial Services, as well as the concealed handgun license.
> MR. CARRIZALES: Not that it be revoked? Simply –
> THE COURT: Yeah. No. Just to be clear, –
> MR. CARRIZALES: – the physical license?
> THE COURT: Just to be clear, the actual physical.
> MR. CARRIZALES: Yes.
> ....
> MS. JONES: Pretrial Services has just brought up an issue to me. They would ask that, given the firearm and the CHL, that he remain in custody tonight until those things are brought tomorrow morning and

that be verified by them, and that the monitor be in place and everything set up in accordance with the Court's conditions. In other words, that he not be let out until those things are set up and ready to go.

THE COURT: Yeah, I agree with that, so I'm – that is the – I'll provide this order won't go into effect – the Marshal is ordered to keep Mr. Adams in custody until they're notified by the Clerk or myself or my chambers or Pretrial Services that he has complied with all of these pre – these conditions of – I mean, the – I guess let me ask. Mr. Carrizales, would you – will you be able, through the family, to get a hold of his concealed handgun license and the firearm?

MR. CARRIZALES: I will certainly speak to his mother and make sure that we get it verified. I don't know, you know, where any firearms are, but where – to the extent that we can locate them, they will certainly get turned in.

THE COURT: Okay.

....

THE COURT: All right. Thank you. As we've discussed, Mr. Adams will remain in custody until certain things have taken place – specifically, that his firearm has been surrendered to Pretrial Services as well as the physical concealed handgun license and the electronic monitoring is set up and in place. And at that time, once Pretrial Services advises the Marshals that that's all in place, then at that time, pursuant to this order, Mr. Adams can be released pursuant to this order setting conditions of release.

Mr. Adams, do you have any questions about anything we've gone over here today?

THE DEFENDANT: No, sir. I will be back here, you said, at 9:00 o'clock tomorrow?

THE COURT: Well, your – no, the firearm and the concealed handgun license must be turned over by 9:00 a.m. tomorrow. Or later, I guess. If you need to ask for more time, Mr. Carrizales, you can reach out to the Court.

MR. CARRIZALES: We should – I'll be working with the ATF agents to try to get it done tonight.

THE COURT: Okay. Very good.

No, you won't actually be back in court here, Mr. Adams.

THE DEFENDANT: Okay.

THE COURT: You'll be ultimately, I think, back at Pretrial Services' office here in this building and then released from there by the Marshals once everything's in place and all those conditions have been met in advance.

THE DEFENDANT: All right.

Dkt. No. 210 at 91, 92, 99-100, 101-02, 106-07. This followed the testimony of several witnesses regarding a concealed handgun license, including the case agent:

> [MS. JONES:] And when the defendant was arrested on this case, where was he?
> [CHAD SCHROEDER:] He went to Texas DPS to renew his driver's license of some sort, and that's where they – they ran him on NCIC and found he had a federal arrest warrant.
> [MS. JONES:] Did he have anything with him?
> [CHAD SCHROEDER:] He had a handgun in his waistband is what I was told by the arresting officer.
> ....
> [MS. JONES:] Now, he has, based on your knowledge, he has a concealed handgun permit?
> [CHAD SCHROEDER:] Yes, ma'am. I hadn't reviewed that myself, but that's what the DPS trooper who made the arrest said, that he had a valid handgun license through the State of Texas.
> [MS. JONES:] Was he in violation of that handgun license by anything that you witnessed?
> [CHAD SCHROEDER:] I don't know about that building. I really don't know about the laws of that. But I do know that him being a confirmed gang member, I don't know when his handgun license was issued, but being a documented gang member in the State of Texas, you are prohibited from possessing a firearm. It's a qualifier for an automatic unlawful carrying of a weapon. You don't have to have any other stipulations to that charge. Just being the confirmed gang member itself allows officers to arrest you for unlawful carrying of a weapon.
> [MS. JONES:] And he's certainly not supposed to be around narcotics?
> [CHAD SCHROEDER:] No, ma'am. Federal law states you won't be around, use narcotics, any kind of user or possess narcotics at all when you're dealing with firearms, so –
> [MS. JONES:] Much less supposed to be using them in furtherance of a drug trafficking crime?
> [CHAD SCHROEDER:] Absolutely.
> ....
> [MR. CARRIZALES:] Okay. And Mr. – again, I want to make sure we're sure about this. Mr. Adams does have a verified concealed handgun license; is that right?
> [CHAD SCHROEDER:] That he does.
> [MR. CARRIZALES:] Okay. And that you – do you know that it was issued in 2015? Do you have any idea?
> [CHAD SCHROEDER:] No, sir. I have no idea when it was issued.

....
[MR. CARRIZALES:] Okay. The other topic I want to make sure and just address, Ms. Adams, is regarding a concealed handgun license. That you know of, does Mr. Adams have a concealed handgun license?
[SHARHONDA ADAMS:] Yes, he does.
[MR. CARRIZALES:] And do you know when he was able to obtain that?
[SHARHONDA ADAMS:] I – if I remember clearly, my brother purchased it for him for his 21st birthday. So I believe he's had it roughly around two years or so.
[MR. CARRIZALES:] Okay. And he took the class and has -- and maintained that; is that right?
[SHARHONDA ADAMS:] Yes, sir.
[MR. CARRIZALES:] So he has a license to carry in the State of Texas?
[SHARHONDA ADAMS:] Yes.
....
[MR. CARRIZALES:] If they ordered that he not possess a firearm and surrender his concealed handgun license, would you make sure that he had no firearms and that he'd –
[SHARHONDA ADAMS:] Yes. I would.
[MR. CARRIZALES:] – surrender that?
[SHARHONDA ADAMS:] Yes.
....
[MR. CARRIZALES (in closing argument):] Your Honor, I would simply assert to the Court that Mr. Adams has no criminal history, has verified employment, has had a CHL during the entire pendency of when this happened, and would be willing to give that up. I believe that there are circumstances in which Mr. Adams would be able to be released and many conditions that would allow that to happen in a safe way to the community.

*Id.* at 20, 41-42, 53, 70, 85.

Adams, through his then-retained counsel, has filed a Motion to Modify Conditions of Release, *see* Dkt. No. 185, which explains that,

> [o]n December 28, 2017, the Court set the conditions of Defendant's release. Condition 7(t), requires Defendant to "surrender all firearms by 9am on December 29, 2017 to pretrial services as well as the concealed handgun license." (Dkt. 140). Defendant was unable to surrender his concealed handgun license. As a result, Defendant has not been released from custody.
>
> After obtaining documents for the Texas Department of Public

> Safety, it has been determined that Defendant does not have a concealed handgun license. See Exhibit A. On February 20, 2018, pre-trial services contacted the parties and informed them that a motion needed to be filed, requesting that bond condition 7(t) be modified, in order for Defendant to be released. See Exhibit B.
>    WHEREFORE, Defendant prays that the Court grant this motion and modify bond condition (t), removing the requirement that Defendant surrender his concealed handgun license.

*Id.* at 1-2.

The government opposes the requested modification and requested a hearing. *See id.* at 2.

United States District Judge Sidney A. Fitzwater referred this motion to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b)(1)(A). *See* Dkt. No. 187.

On March 22, 2018, the government also filed a Motion for Pretrial Detention Based on New Information, *see* Dkt. No. 195, which Judge Fitzwater also referred to the undersigned for a hearing, if necessary, and determination under 28 U.S.C. § 636(b)(1)(A), *see* Dkt. No. 197. The government

> moves for the pretrial detention hearing to be reopened due to material information not previously known, pursuant to 18 U.S.C. Section 3142(e). The Court previously set conditions of release for defendant Jacqureay Adams. Because Adams was not able to comply with the Court's conditions, he is still in custody. Adams has moved for his conditions to be modified. Since the detention hearing the government has learned new information that not only supports the Court reopening the hearing but further demonstrates that Adams should be detained pending trial.
>    Adams stands charged in a three-count superseding indictment with firearm and narcotics offenses. The firearm count carries a mandatory minimum sentence of ten years imprisonment pursuant to 18 U.S.C. Section 924(c)(1)(B)(i). While attempting to obtain a commercial driver's license, Adams was arrested on the federal warrant. At the time of arrest Adams was carrying a handgun. Adams told pretrial services

> that he had a concealed handgun license (CHL), thus allowing him to carry the weapon. Adams' mother, the appointed third party custodian, testified at the detention hearing that Adams had a CHL. The Court ordered Adams released on pretrial detention with conditions, including that Adams surrender his physical concealed handgun license to pretrial services. Not only did Adams not surrender his license, but his and his mother's explanation for lack of surrender changed over the ensuing days. Specifically, Adams showed a certificate of completion document that he purported was his CHL. Adams personally wrote to the Court stating that he "never received a hard copy of my CHL. I've always used my certificate of completion ... after doing further research, I've found out that, due to medical reasons my CHL was denied." [sic] (Dkt. No. 194.)
>
> The government has received Department of Public Safety records regarding his CHL that suggests Adams' previous statements to the Court and pretrial services are untrue. In the records, Adams wrote a handwritten appeal of his denial of his CHL application. Additionally, Adams personally appeared in court for the hearing wherein the Judge affirmed the original denial. Based on this information, Adams' previous explanation regarding his CHL status and his knowledge of the status are untruthful and he cannot be trusted to comply with any conditions of release set by this Court.
>
> Additionally, Adams no longer has a trustworthy third party custodian. Since Adams third party custodian testified that he had a CHL, at best, she does not know the truth about her son and can't be trusted to assure his appearance in court. In the alternative, she lied to the Court, which also makes her an unsuitable and reliable third party custodian.
>
> In conclusion, Adams is charged with a crime that has a presumption of detention. To any extent that Adams successfully rebutted this presumption, that rebuttable evidence no longer exists. Considering Adams' propensity to possess weapons and the fact that he was specifically denied his CHL because he could not be trusted to be safe with a firearm, public safety is in jeopardy if he is released. There is no condition or combination of conditions that would reasonably assure Adams' appearance at trial. 18 U.S.C. § 3142(a)(3). As such, the government requests this Court detain Adams pending trial.

Dkt. No. 196 at 1-3.

The Court held a hearing on both motions on March 23, 2018, at which Adams, his then-retained counsel, and the government's counsel appeared and at which

-9-

Adams's counsel confirmed that she was aware of the government's position as to detention before its motion was filed on March 22 and was prepared for a hearing on that motion as well as Adams's own motion to modify. The Court heard argument on both motion and admitted Government Exhibit 1 without objection. At the conclusion of the hearing, the Court took both motions under advisement to permit time for the December 28, 2017 detention hearing to be transcribed to assist with the Court's decision.

The Court has now reviewed that transcript, *see* Dkt. No. 210, as well as the transcript of the March 26, 2018 hearing, *see* Dkt. No. 211, and, for the reasons and to the extent explained below, the Court GRANTS Defendants Jaqureay Adams's Motion to Modify Conditions of Release [Dkt. No. 185] and DENIES the Government's Motion for Pretrial Detention Based on New Information [Dkt. No. 195].

**Legal Standards**

The Court is required to "order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a), unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

If release under Section 3142(b) on personal recognizance or an unsecured appearance bond will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, the Court is directed to release a defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person – (I) remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community; (ii) maintain employment, or, if unemployed, actively seek employment; (iii) maintain or commence an educational program; (iv) abide by specified restrictions on personal associations, place of abode, or travel; (v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; (vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency; (vii) comply with a specified curfew; (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon; (ix) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner; (x) undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified

institution if required for that purpose; ... and (xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *accord United States v. Byrd*, 969 F.2d 106, 108 (5th Cir. 1992).

"For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).

18 U.S.C. § 3142(f)(2) further provides that a detention "hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Under Section 3142(f)(2), the Fifth Circuit has "interpreted th[e] standard as asking whether any 'new' information was presented." *United States v. Stanford*, 367 F. App'x 507, 510 (5th Cir. 2010) (citing *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) ("We agree with the district court that the testimony of Hare's family and friends is not new evidence."); *United States v. Stanford*, 341 F. App'x 979, 984 (5th Cir. 2009) ("It cannot therefore be said that [the witnesses'] testimony was newly discovered or previously unavailable.")).

The Court may reject a motion to reopen because the evidence to be presented

is not new or because it would not be material. *See Hare*, 873 F.2d at 799 ("Hare seeks a second hearing on various statutory grounds. First, he seeks to have his sister, mother, and a friend testify that he appeared whenever required to do so during prior prosecutions. He would also offer evidence of his exemplary conduct as an electrician while detained and of the fact that his pretrial incarceration will last considerably longer than usual. Under the Bail Reform Act a hearing may be reopened at any time before trial 'if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of risk of flight or dangerousness].' We agree with the district court that the testimony of Hare's family and friends is not new evidence. Nor can the length of his current or potential future detention be considered under this section since it is not material to the issue of risk of flight or dangerousness. Given Hare's past record of narcotics convictions and the seriousness of the present charges, the district court did not abuse its discretion in finding that Hare's work as an electrician and selection as a trustee while in detention is not sufficiently material to the issue of dangerousness to justify a second hearing." (footnote omitted)); *accord Stanford*, 367 F. App'x at 510-11.

## Analysis

Proper conditions of pretrial release under Section 3142(c) are not intended to punish defendants, who have not yet been convicted of or sentenced for the charged offenses at issue. In setting conditions under Section 3142(c)(1), the Court's task, rather, is to ascertain and "impose the least restrictive combination of conditions that the court determines will reasonably assure [a defendant's] appearance as required

and the safety of any other person and the community." *United States v. Yeh*, No. 3:08-cr-96-P, 2013 WL 6568118, at *2 (N.D. Tex. Dec. 13, 2013). And the Court is directed to impose conditions that will reasonably assure – not guarantee – the appearance of the person as required and the safety of any other person and the community. *See United States v. Fortna*, 769 F.3d 243, 250 (5th Cir. 1985). Another court has observed that "[i]t is not uncommon for courts to impose conditions of pretrial release that attempt to prevent or reduce the risk that the defendant will engage in similar or related criminal activities to those charged in the complaint or indictment." *United States v. Call*, 874 F. Supp. 2d 969, 979 (D. Nev. 2012).

This is an unusual set of facts. But the Court believes it boils down to this: Does the fact that Adams never actually had a valid concealed handgun license but asserted (at least through counsel and his mother) that he did materially change the balance of facts that led the Court to deny the government's detention motion and order Adams released on conditions.

Having carefully considered the entire record laid out above, the Court determines that it does not. As the government's counsel acknowledged, there were grounds for confusion here because Adams was issued a license number for a concealed handgun license. Even the arresting officer apparently believed that he possessed a valid license. And he was willing to walk into a Texas Department of Public Safety office with a concealed handgun – according to Adams, because he believed he had a valid license after a temporary period in which it was denied or revoked.

The Court was not persuaded that Adams's possessing a handgun in his

waistband in the apartment that was the operational center of this drug conspiracy weighed against any concerns of his alleged dangerousness.

And the Court's conditions require that he surrender his firearms – which he has and which the government does not suggest as a general matter he could not legally own – and that he not possess any firearms while on release. He has done so, and the state authorities should be responsible for updating their databases to remove any indication that Adams has a concealed handgun license.

In short, the Court is not convinced that Adams or his mother were lying to the Court about the status of a concealed handgun license – and then engaged in an elaborate (and quite prolonged) effort after the hearing to appear to be looking for something that they knew from the outset did not exist – as opposed to having been genuinely confused by what the government has acknowledged were circumstances that could engender confusion. *See* Dkt. No. 211 at 8.

In light of the charged offenses and the evidence presented at the detention hearing and the March 26, 2018 hearing as well as in support of the instant motion and at the hearing, the Court finds and determines that Adams's requested modification under 18 U.S.C. § 3142(c) to Defendant's existing conditions is appropriate to achieve the least restrictive combination of conditions that will reasonably assure Defendant's appearance as required and the safety of any other person and the community and the Court MODIFIES its December 28, 2017 Order Setting Conditions of Release [Dkt. No. 140] to eliminate the condition (Condition (t)) that Adams mus surrender his concealed handgun license.

**Conclusion**

For the reasons and to the extent explained above, the Court GRANTS Defendants Jaqureay Adams's Motion to Modify Conditions of Release [Dkt. No. 185] and DENIES the Government's Motion for Pretrial Detention Based on New Information [Dkt. No. 195].

SO ORDERED.

DATED: April 2, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE